IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–01668–KMT–MEH

ESTES EXPRESS LINES, a Virginia corporation,

    Plaintiff,

v.

SMI CREATIONS, LTD., a Colorado corporation,

    Defendant.

# **ORDER**

    This matter is before the court on "Motion of Plaintiff for Summary Judgment" [Doc. No. 27] ("Mot.") and a Brief in Support [Doc. No. 28] ("Br.") both filed February 18, 2010. "Defendant's Response to Plaintiff's Motion for Summary Judgment" [Doc. No. 29] ("Rsp.") was filed on March 12, 2010 and "Reply of Plaintiff to Defendant's Response to Plaintiff's Motion for Summary Judgment" [Doc. No. 33] ("Reply") was filed on March 26, 2010. The court has reviewed the pleadings and determined that oral argument would not be beneficial. Therefore, the matter is ripe for review and ruling.

    This dispute arises for collection of freight shipping charges incurred by the defendant for various shipping services rendered by the plaintiff during the time period May 28, 2008 through October 27, 2008. (Br., Ex. 1, itemized list of unpaid shipping invoices.) Defendant does not dispute that the invoices in question were not paid when due and have not, to date, been

paid. (Rsp. at 4, ¶ A.) Defendant disputes, however, Plaintiff's claim for acceleration of the invoiced amounts to the undiscounted tariff rates and disputes the applicability of collection fees. (*Id.*)

After advising the court about extraneous and irrelevant settlement offers Defendant has made to Plaintiff, Defendant sets forth its primary legal argument that, as a "small business," it is exempt from the collection of "undercharges" by Plaintiff. Further Defendant argues alternatively that by ignoring contractual provisions for debt acceleration and collection/late fees in the face of Defendant's frequent late payments for a substantial period while the parties were still doing business, Plaintiff has waived its right to collect "undercharges" and penalty/collection fees.

The parties do not dispute that Defendant is a "small business" as defined in Title 15 U.S.C., § 632(a)(1) and 49 U.S.C., Section 13709(h) (the Negotiated Rates Act of 1993 ["NRA"]) (Reply at 1); however Plaintiff argues the NRA does not apply to the defendant in these circumstances and Defendant is not entitled to the exemption applicable to the collection of undiscounted rates under the facts of this case.

### *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

*Legal Analysis*

It is not disputed that Plaintiff Estes Express Lines, Inc. ("Estes Express") is a common carrier regulated by the Surface Transportation Board (STB) (formerly the Interstate Commerce Commission ) which administers the provisions of Title 49 U.S.C. § 13101 *et seq. See In re Americana Expressways, Inc.*, 133 F.3d 752, 753-54 (10th Cir. 1997). Under the statutory system originally embodied in Title 49, common carriers were required to file within their tariff, the rates charged for freight carriage. 49 U.S.C. § 13702. The regulatory regime required those carriers to charge those filed rates, and only those rates, to customers. 49 U.S.C. § 13101*; Americana Expressways*, 133 F.3d at 754. Under the "filed rate" doctrine, shippers, unless otherwise exempted, were liable to pay the filed rate, even if a carrier negotiated and actually charged a lesser rate for the particular customer.

Congress eliminated the requirement that motor carriers file their tariffs with the ICC, and declared any and all filed tariffs null and void, when it enacted the Trucking Industry Regulatory Reform Act of 1994 (TIRRA), Pub.L. No. 103-311, 206(c), 212, 108 Stat. 1683, 1684, 1690, (effective August 26, 1994). *See* 49 U.S.C. 13210(a)(4). Courts have recognized, however, that "tariffs continue to be the standard industry practice and the medium by which carriers publish their rates, classifications, rules and practices." *Fulfillment Services, Inc. v. United Parcel Service, Inc.*, CV 05-538 TUC DCB, 2006 WL 1061892, at *4 (D. Ariz. April 19, 2006). The fact that carriers label their contract documents "tariffs out of habit," *Tempel Steel Corp. v. Landstar Inway, Inc.,* 211 F.3d 1029, 1030 (7th Cir.2000), does not impart any special

4

status nor make such contracts so labeled subject to the limited statutory or regulatory tariff requirements. *Fulfillment Services* at *5.

Estes Express apparently negotiated with SMI for shipping charges which were significantly lower than the freight rates filed in Estes Express's tariff with the STB.[1] (Compl. ¶¶ 8-9; Mot., Aff. of Wendy Belcher,¶ 4; Mot. Br. at 2.) The lesser rates that Estes Express negotiated and charged SMI are called "negotiated rates" or individually determined rates. Estes Express referred to the negotiated rates as "discounted." (*Id.*) Negotiated rates must be memorialized in a written agreement between the parties. 49 U.S.C. § 13711(f). In the era preceding TIRRA, and still to the extent it is applicable, the difference between the rate that common carriers file with the STB, and the lower rates negotiated and actually charged to a shipper such as SMI is known in the industry as an "undercharge." *See In re Lifschultz Fast Freight*, 63 F.3d 621, 622 (1995); *In re Apex Exp. Corp.*[2], 190 F.3d 624 (4th Cir. 1999) ("[a]n undercharge occurs when a [common] carrier ignores the negotiated 'off-tariff' rate and seeks to charge the filed rate."

### A. *Small Business Exemption.*

Customers of a transportation carrier, whether or not they receive favorable negotiated rates, "are charged with notice of [the tariff], and they as well as the carrier must abide by it,

---

[1] Neither party provided the court with the operative contracts governing the parties' relationship and concerning pricing as referenced in the Complaint at paragraphs 8 and 9.

[2] Plaintiff incorrectly cites to *In re Apex Exp. Corp.* in its Reply as appearing in 194 F.3d. Further, the court notes Plaintiff often does not reference relevant page numbers within the cases upon which it relies. Such legal authority is less than helpful to the court.

unless it is found by the regulating agency to be unreasonable."[3]  *F.T.C. v. Verity Intern., Ltd.*, 443 F.3d 48, 61 (2d Cir. 2006)(Regulation by FCC).

Title 49 U.S.C. § 13709, commonly called the Negotiated Rates Act of 1993 (NRA), lays out the procedures for resolving claims involving unfiled, negotiated rates when recoupment of the undercharges are sought by or on behalf of a common carrier.

> (a) Transportation provided at rates other than legal tariff rates.--
>    (1) In general.--When a claim is made by a motor carrier of property (other than a household goods carrier) providing transportation subject to jurisdiction under subchapter II of chapter 105 (as in effect on December 31, 1995) or subchapter I of chapter 135, by a freight forwarder (other than a household goods freight forwarder), or by a party representing such a carrier or freight forwarder regarding the collection of rates or charges for such transportation *in addition to those originally billed <u>and collected</u>* by the carrier or freight forwarder for such transportation, the person against whom the claim is made may elect to satisfy the claim under the provisions of subsection (b), (c), or (d) . . .

49 U.S.C.A. § 13709 (emphasis added).  The statute then outlines certain instances and circumstances wherein a shipper's liability may be reduced when a carrier is no longer transporting property.  *Id*.

Defendant argues that the "undiscounted" rates and the collection fees which are sought by Plaintiff on the unpaid invoices in question represent an undercharge for which the NRA would be applicable.  SMI argues that by virtue of its status as a small business concern pursuant to Section 13709(h), it is exempt from the collection of undercharges under the NRA.  The statute provides

---

[3] Neither party has argued that the STB has found Estes Express's tariff rates to be unreasonable.  Therefore, the court will assume no such finding has been made.

> (h) Claims involving small-business concerns, charitable organizations, and recyclable materials.--
>    (1) In general.--Notwithstanding subsections (b), (c), and (d), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally *billed <u>and paid</u>*;
>        (A) If such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.),

49 U.S.C.A. § (h)(1)(A) (emphasis added).

Under the simple terms of the statutory subsection, the small business exception of the NRA could still be applicable, even in light of TIRRA and the abolishment of the fixed rate doctrine. That provision only requires that there be a difference between the carrier's "applicable and effective tariff rate and the rate originally billed and paid." *Id.* Arguably, the reference to the "originally billed and paid" rate in 49 U.S.C.. § 13709(h) could be read in the context of the statute as a whole to mean the originally negotiated rate. *In re Apex Exp. Corp.*, 190 F.3d 624, 641 (4th Cir. 1999) (referencing, e.g., *Bennett v. Spear*, 520 U.S. 154, 174 (1997) for proposition that a subsection should be interpreted in context of entire statute).

Although there is no dispute that Estes Express billed SMI for shipping at the negotiated discounted rate, it is also undisputed that SMI did not pay for the services, even at the discounted amount. Apparently, the original billing remains unpaid even as of this date. Therefore, the issue before the court is whether a discounted and billed shipping charge must have been previously paid by the shipper at the lower rate as a predicate to application of the small business exemption, to the extent that exemption applies in this case.

In resolving an issue of statutory interpretation, this court is tasked "to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993); *United States v. Kammersell*, 196 F.3d 1137, 1139 (10th Cir. 1999); *United States v. Battle*, 289 F.3d 661, 666 (10th Cir. 2002). The statutory text is the best evidence of a statute's purpose, *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 98 (1991) (overruled on other grounds), and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises*, 489 U.S. 235, 240-41 (1989); *Kammersell*, at 1139. Thus, this court has a duty to "give effect, if possible, to every clause or word of a statute," *Moskal v. United States*, 498 U.S. 103, 109-110 (1990), and to give the "words used" their "ordinary meaning." *Id.*; *Richards v. United States*, 369 U.S. 1, 9 (1962).

The statute itself clearly provides in subsection (a), general terms, and in subsection (h), exemptions for small business concerns and others, that the shipping charges at the negotiated rate must have been billed by the carrier <u>and paid by the shipper</u> at the lower negotiated rate for the exemption to apply.

Case law involving this section of the NRA is not helpful given the facts of this case and the enactment of TIRRA in 1994. Most of the cases involving collection of undercharges from a shipper resulted from a carrier's bankruptcy when a trustee attempted to collect the undercharges

8

based on published tariff rates from shipping customers for the benefit of creditors. *See Lifschultz Fast Freight*, 63 F.3d at 621 (collecting cases). In each of the cases, the shipper had paid the negotiated rate for the shipping as invoiced by an active motor carrier at the time. When the carrier ceased doing business, the small business exemption to the NRA precluded the trustee or any representative of the carrier from recovery of the undercharge. *See, e.g.*, *Rebel Motor Freight, Inc. v. Freeman Drywall Co.*, 914 F.Supp. 1516, 1521 (W.D. Tenn.,1994) ("The NRA's statutory scheme provides that once a defendant in an undercharge case proves it is a small business concern within the meaning of the statute, it is automatically exempt from liability.")

Although as noted by Defendant, such an exemption was a laudable amelioration of a harsh result in the proper context to protect the financial vulnerability of a small business from the harsh consequences of the fixed rate doctrine, it is not logical to assume Congress intended to reward any business, large or small, for dereliction of its responsibility to pay invoices due and owing. The shipper defendant in this case, SMI, has not paid its shipping charges at the negotiated—or any other—rate. Giving plain meaning to the statutory provisions of Title 49 U.S.C. § 13709(a)(1) and (h), even assuming NRA's continued viability in the post-tarrif era, in order for a shipper to benefit by the small business exemption, that shipper must have been billed at the discounted rate and have previously <u>paid</u> the discounted rate billing. Since SMI has not paid the invoices at the discounted billing rate, it cannot claim the small business exemption embodied Section 13709(h) of the NRA.

### B. Breach of Contract/Late Fees and Collection Fees

Plaintiff claims that "the invoicing of an undiscounted rate by Plaintiff is simply the enforcement of a late payment provision that is a part of the contractual relationship of the parties . . ." (Reply at 2.) Plaintiff further states as justification for the claimed "Discount Added Back"[4] calculation and for the "Collection Fee" as calculated, that "[t]he Plaintiff is electing among the alternatives open to it pursuant to its agreement with Defendant." (*Id.*)

As previously noted, neither the plaintiff nor the defendant provided the entire contract or agreement upon which Plaintiff relies to the court. Whether the portion of the tariff provided was actually a filed tariff or an unfiled contractual agreement between Plaintiff and Defendant, however, there does not seem to be any dispute that the document is part of the contractual obligations between the parties. (Br., Ex. 2.)

The Complaint alleges

> 8  On or after June 6, 2008, Plaintiff and Defendant had between them a Pricing Agreement with regard to certain future shipments. Such Pricing Agreement incorporated into these future shipments Plaintiffs tariffs including the EXLA 105 rules tariff. Pertinent shipping charges were billed by Plaintiff under Account No. 0026276.

Compl. ¶ 8.  Plaintiff provides no explanation of the term "EXLA 105 Rules Tariff" in its Complaint. However, attached to Plaintiff's Brief supporting the Motion, as Exhibit 2, is a document entitled "Rules Tariff; Rules - General; Payments of Charges, Item 720" which is described in the Brief as "Estes Express Lines 'Rules Tariff Payment of Charges', page 48,

---

[4] The contractual equivalent to an undercharge as defined in the transportation statutes.

paragraph 4." (Br. at 2.) Shippers are required to be on notice as to each of the provisions of a carrier's filed tariff; similarly, the parties to a contract are on notice as to the provisions of a contract to which they are both parties. Based on the Response, there does not appear to be any dispute that Exhibit 2 was part of the filed tariff or unfiled contract between Estes Express and SMI at the times where shipping services were being provided to SMI.

The tariff/contract states

All shipments upon which the lawfully applicable rates and charges are not paid in full within a thirty (30) calendar days period from date of invoice will be subject to the following late payment provisions: . .
    3. A shipper who is delinquent in paying the freight charges will accrue the following service charges on each delinquent freight bill.
       a) A late payment service charge will be applied to each delinquent freight will, as follows:
LATE PAYMENT SERVICE CHARGE ........................................... 10%
MINIMUM SERVICE CHARGE .................................................... $21.00
       b) Shipper will have up to fifteen (15) calendar days from the date of Shipper's receipt of Carrier's notification, where the date of receipt is documented by a signed receipt, or (ii) up to twenty (20) calendar days from the date of mailing of Carrier's notification, where the date of Shipper's receipt is not documented by a signed receipt, in which to present payment in full.
       c) Non-payment after this time period, will result in the shipper paying the carrier's full undiscounted, class rates applicable at the time of the shipment, based on the applicable NMFC rating(s).
    4. If Carrier elects to proceed with legal action or place delinquent charges with an outside collection agency, a thirty percent (30%) collection fee, calculated on the gross, undiscounted charges, will be applied to each delinquent invoice.

(Br., Ex 2.) Again, as noted previously, there is no evidence that the STB has declared this part of Estes Express's tariff unreasonable, to the extent the tariff may have been filed.

It is undisputed that SMI did not pay the invoices set forth in the Brief, Exhibit 1, in the principal amount of $12,054.50. It is undisputed that the services were rendered. Therefore, it cannot be factually disputed that the unpaid accounts are, therefore, delinquent.

Therefore, under the express terms of the tariff or contract, SMI is liable, absent any other legal excuse, to pay to the plaintiff the full undiscounted class rate for shipping applicable at the time of the transactions plus a thirty (30%) percent collection fee on the full undiscounted freight charge for each invoice which SMI failed to pay as set forth in Exhibit 1 to the Brief.

### C. *Waiver*

Exhibit 1 reflects that even though invoices dated in June 2008 were not being paid, Plaintiff continued to ship freight for Defendant and continued to invoice at the discounted rate into at least October of 2008. Defendant argues that this behavior on the part of the Plaintiff constitutes waiver by the Plaintiff of any claim to remove the discount from the shipping charges and to claim late fees or collection fees. As support, the Defendant relies upon *Dreier v. Sherwood*, 238 P. 38 (Colo. 1925) and *Jones v. Adkins*, 526 P.2d 153, 155 (Colo. App. 1974).

*Dreier* involved a purchase of real estate wherein the Defendants entered into an oral agreement to waive a provision in the purchase contract. Relying on the defendants' agreement that the plaintiffs would not be required to pay the defendants $10,000 as originally contemplated in the purchase agreement, the plaintiffs allowed the date for the payment to pass without any attempt to make any part of the payment. Thereafter, "defendants suddenly changed their minds, and, without any previous intimation of so doing, repudiated the oral agreement, by giving the plaintiffs written notice of the forfeiture of the $5,000 paid by the plaintiffs under the

12

written contract." *Dreier*, 238 P. at 39. This case has no relevance to the instant case whatsoever.

It is undisputed that SMI contracted with Estes Express to provide shipping services at a given rate. It is undisputed that Plaintiff provided the services as requested, the freight was delivered, the shipping charges were invoiced at the agreed upon discounted rate, and that Plaintiff did not pay as agreed. There is no evidence submitted by Defendant that Plaintiff ever agreed to waive payment or to forgo its remedies set forth in the tariff or contract. At this point, the burden is on Defendant to provide evidence showing a material dispute on this issue by bringing forth evidence suggesting the Plaintiff affirmatively agreed that, first, Defendant could pay the shipping charges whenever it wanted to—or not—at its own discretion, or that second, the Plaintiff would not eventually resort to litigation to collect billings outstanding for six months or more without payment." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325) (Once moving party meets initial burden for summary judgment, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter.).

*Jones* is equally inapposite to the case at bar. *Jones* involved an assignee of contract for purchase of a truck originating out of a company's fleet of autos, who brought an action against the seller company for failure to comply with an alleged contractual requirement that seller provide liability insurance covering the truck. *Jones*, 526 P. 2d at 154. As one of the more minor arguments, the seller company raised the issue that the buyers (assignors to the plaintiff/assignee) were in default under the terms of the sales contract in that several payments had not been made at the time of the accident. *Id.* at 155. The company argued that since the

13

buyers were in default under the contract, the company should be excused from its obligations under the defaulted contract. However, at some point after the accident involving plaintiff, the seller company accepted the late payments from the buyers without objection, thus bringing the contract current. *Id.* The court stated, "[e]ven assuming, arguendo, that buyers' non-payment was a breach [of the sales contract with seller company], it was waived by defendant company's later acceptance of payment and failure to declare the contract in default."

Again, *Jones* is irrelevant to the case at bar. SMI has not paid any of the invoices at issue in this case, some outstanding since June of 2008, almost two years past. The silent acceptance of late payments by SMI prior to June 2008 without invocation of penalties may have precluded Estes Express from enforcing late fees or loss of the discount rate on those payments, and under some circumstances could have affected the collection of such fees on future late payments by SMI. But there have been no payments on the invoices at issue herein—a completely different proposition.

Defendant appears to urge that because, as part of settlement negotiations in this federal case, SMI offered an entry of judgment against it in the amount of $13,000.00 with a condition that minimal payments be made over a term, it should be treated as though it has paid the invoices, albeit late. This court disagrees. First, SMI has not tendered unfettered payment in the full amount it concedes is due and owing for services rendered under the discounted negotiated rate to Estes Express. Second, Estes Express has not accepted payment of the invoices, since no payment has been tendered and, although not determinative, has not accepted SMI's offer of judgment, with its attached strings.

14

Other cases involving facts more aligned with the case at bar support this view. In *Moore's Trucking Co. v. National Starch & Chemical*, 9304750 (GEB), 1994 WL 741081, at * 3 (D.N.J. Sept. 27, 1994), the plaintiff motor carrier sought loss of discount on rates plus a late payment fee of over $216,000.00 on 2,025 bills. The court dismissed the claim in its entirety on waiver, estoppel, and laches grounds based on the following facts: (1) the motor carrier had accepted payment of the discounted amount on the bills in question without protest; (2) the motor carrier had continued to do regular business with the customer during the relevant time period without indicating an intent to actually enforce the loss of discount provision; (3) the motor carrier had waited between two and four years to pursue the loss of discount provisions; and (4) the customer had relied upon this non-enforcement insofar as the customer could have sought out a new carrier if it had known that the motor carrier intended to enforce the loss of discount provisions after all. Again, SMI cannot succeed as a matter of law on its waiver argument because it never paid the invoices in question. In fact, Defendant admits

> due to business conditions affecting Defendant in 2007 and 2008, Defendant was frequently not able to pay Plaintiff's invoices within thirty (30) days. Plaintiff never tried to collect any more than the 'Original Amount' or discounted price that was originally agreed to. Plaintiff accepted the payments from Defendant at the 'Original Amount' or discounted price, and continued to provide additional transportation shipping services to Defendant, even though Defendant was behind in payments to Plaintiff.

(Rsp. at 3, ¶ 6.) Again, this begs the true issue in the case. This case seeks remuneration for invoices that were <u>not ever paid</u>; not simply invoices which were paid late.

15

Therefore, it is **ORDERED**

"Motion of Plaintiff for Summary Judgment" [Doc. No. 27] is **GRANTED**. The Clerk shall enter judgment in favor of Plaintiff Estes Express Lines, Inc. and against SMI Creations, Ltd. Costs shall be awarded to Plaintiff.

Dated this 27th day of April, 2010.

**BY THE COURT:**

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge